Mr. Carpenter, are you ready? May it please the Court, Kenneth Carpenter appearing on behalf of Mr. Timothy Warner. Mr. Warner was seeking an increase in his rate of service-connected compensation, specifically for his service-connected disability to his lumbar spine. This claim included consideration of an extra scheduler rating. The VA had increased Mr. Warner's rating from 20% to 40%, effective December 1995. Mr. Carpenter, before we go any farther, just straighten me out, if you would, on what the practical impact of a decision in your favor here would be, Is this all have to do with effective date? Is that why it matters? Correct, Your Honor, except that in this system you get extra scheduler consideration for a total rating, which is referred to by the acronym TDIU. Extra scheduler consideration under 3.321B is a slightly different regulatory scheme. Right, but does it produce a larger pot of money at the end? It would potentially, but there's nothing under 3.321B that requires it to go all the way to total. In other words, the adjustment could be, right now he has a combined of 70, would be maybe to raise it to a combined of 80 or a combined of 90 for compensation. Right, but since he already has 100% under TDIU. Post 2006, it would not be relevant. It all goes back to effective date then? The relevant timeframe from February 1996 when he met the scheduler requirements under 416A for a combined rating of 70%. His actual mathematical ratings, if you used what I call non-VA math, that actually totals 100% scheduler. But using the rating schema for the VA, they combine those ratings for compensation purposes and he's paid only at the rate of 70%. And the question then becomes whether or not under this extra scheduler provision, where there is evidence of a market interference of employment, is the fact that he had a combined rating of 70 something that should have been taken into consideration when they considered and applied this particular regulation. Mr. Carpenter, on that issue, the government says on page 20 of the red briefs that extra scheduler consideration under section 3.321B1 requires consideration of service-connected disabilities. It's being raised for the first time on appeal before this court. Is that correct? That's not correct. It was both decided by the board and raised by the appellant in the briefing before the Veterans Court. The issue I think that the government is making is the way in which the  in terms of the error as to why this regulation was not correctly applied. And in the briefing, we make two arguments, one of which was eight to ten of your reply, but I didn't find it particularly helpful. I'm sorry, in your reply brief, you say that you made those arguments, but I didn't find it particularly helpful as far as actually showing me that they were made. I'm sorry, you're talking about made in the opening brief or made below? Below. I'm sorry. Well, the argument that was made below is what is the legal standard that is required to be considered under 3.321B. And the court below said that in terms of the argument that was presented below that the board was confused about what the regulatory criteria was or the legal standard to be met, that the board didn't give an adequate statement of reasons or bases for why the veteran was not entitled under that regulation. So the argument was presented that the regulation was applicable and was not correctly applied because they didn't, they limited their consideration only to the back disability. And that's clear from the board's decision. 3.321 is framed in the alternative for service-connected disability or disabilities. And that the claim is broadened once you go to the extra scheduler consideration and must consider the additional service-connected disabilities that the veteran has for purposes of the assignment of an extra scheduler rating. In other words, whether that rating as assigned would be adequate under the rating schedule. In this case, the back disability is rated under 4.17a which is a specific criteria and the only other available rating to Mr. Warner is a 60% rating which is based totally upon incapacitating episodes. And those incapacitating episodes have nothing to do with the effect of his other service-connected disabilities. Therefore, he is limited by regulation to getting more than a 40% rating which then implicates the provisions of 3.321b1. 3.321b1 requires the VA to consider all of the service-connected disabilities which is why it is relevant that he met the scheduler requirements because it shows that he had a combined rating of all of his service-connected disabilities at 70%. And that 70% combined rating was demonstrative evidence of a market interference with employment. And that is the specific regulatory criteria under 3.321b. What the board did and what the court below affirmed was to allow the VA to only look at this through the narrow prism of whether or not his service-connected back disability required or raised a market interference with employment. And that's contrary to the plain language of the regulation. They're impermissibly narrowing the regulation to only allow them or require them to consider the service-connected condition that the claim for increased is raised. But if it's part and parcel of the same claim and the regulation is the plain language of the regulation requires, then the veteran should be entitled to a much broader consideration than the very narrow consideration that was afforded by the board. And that was the legal error. Can I take you back to Judge Bryson's earlier question about what difference it makes here and why this isn't moved? Am I right and I think you just said that to be considered for the extra scheduler benefit, there's a minimum of 40%? Under 416A. No, I was talking about the scheduler rating. The scheduler rating. But that doesn't have anything to do with the extra scheduler rating. The extra scheduler rating under the regulation at issue here, 3.321b, has no scheduler requirements to it. It's just whether or not as a result of the veteran's service-connected disability or disabilities, there is a market interference with employment. Okay, because you said this could arguably go back to 1996, right? That's correct. I'm just looking at the record here and it seems like he had a disability rating that increased to 10% in 97, to 20% in 2004, and to 40% in 2005. So you're suggesting that if he were to win on the current argument of extra scheduler consideration, he could go back and get that for periods in which he was rated 10% disabled or 20% disabled? No, the decision in 2005 took the effective date all the way back to 1996, or I'm sorry, 1995, for the grant of the 40% rating. So the 40% rating increase became effective as of December 1995. The date that you're addressing in 2005 was when they made that decision about the effective date for that scheduler award. At issue here is his entitlement from that date forward to consideration under 3.321B for an extra scheduler rating, not for the scheduler rating. And the only other available rating to him is the difference between 40 and 60, which is why 3.321B applies under the VA's regulation, because you have to show that the regulation is not effective in terms of addressing the overall situation. Did he have to have made that request at the time for an extra scheduler rating? No, he did not, and that's one of the very unusual things about this particular regulation. There is no VA form or application for benefits under this particular regulation. One could argue that the VA form 8940 for an extra scheduler rating based on unemployability is covered by that VA form, but there is no comparable VA form for 3.321B. So in every claim for disability, there's no claim and the VA has to look at whether or not you've met the requirements for extra scheduler benefits? If you meet the requirements set out under the regulation, and that is that the rating schedule is not adequate to compensate for the level of disability that is present. The disconnect in the VA's regulation is that the VA regulation refers to both service-connected disability or disabilities. The VA would limit that consideration only to the particular claim at issue when their regulation is broader than that. So what's the difference between you're saying it should be broader than that? When you look at the qualifications for 3.321B, the market interference with employment, is it the back disability alone or is it the four or five or six other disabilities that Mr. Warner has in combination? When did he first raise the knee disability question? 1995. So the award of 10, 20 and what ultimately increased to 40 was for the knee and not the back or for a combination of both? Actually I believe both were pending and ultimately all that was before the board in this particular case was the rating to be assigned for the back to include extra scheduler consideration. So the answer to my question was that the rating he had 10, 20 and 40% through the 90s through 2005 was all about the back and not the knee? I would have to refer to the record and I can do that when I get up for rebuttal and advise you, Your Honor. Doesn't that matter with respect to your argument that this case is not moved and that there would have been a larger back? I mean that's predicated on your assuming that when you go back to 1996 or 2 or whatever we're talking about, that somebody would have at the time have looked given what he was being awarded at whether or not there was an extra scheduler benefit that would also do him? Is that the way the system would work? That was the error that was alleged before the Veterans Court in the board's failure to correctly apply 3.321B by limiting their focus only to the back. That because extra scheduler was required to be considered and there was a May 2009 joint remand that said go back and look at the evidence of market interference. The point below was that that market interference had to consider the fact that he met the scheduler requirements. He had a combined rating of 70 all the way back to February of 2006. He agreed that his combined ratings for all of his service-connected conditions were 70%. And what's the effective date of his TDIU? March 31, 2006. 2006, okay. So there's a considerable window here of potential additional disability higher than 70 combined between February of 96. But it's getting 100% now. From March of 2006, that's correct. And the extra scheduler obviously can't go over 100%, right? That's correct. So what we're talking about, again, is the window. Maybe it's not a qualified answer at first, but I think the answer, it sounds like the answer is unqualified. What we're talking about is effective date. That's what's at issue here. As a practical matter. As a practical matter, it's hard to get a sense of what the actual... Well, put it this way. The board itself seemed to think that this whole issue might be moot because they said so. And they said the only reason we're going on and saying anything more about this is because we've been instructed to do so. But other than that, they say it's moot. And it was moot under 416A because the issue of interference. And they had assigned an effective date of March of 2006. But you're saying that what is so critically important and the reason you're standing up here today is because of the difference between 1996 and 2006. Yes, but the standard under 416 is higher than the lower standard of market interference. You have to be unable to follow substantial gainful occupation for 416 total extra scheduler rating as opposed to extra scheduler rating under 3.321B, which only requires a market interference. Thank you very much. Thank you. And we will restore your rebuttal time. We'll give you at least three minutes because we used up a lot of your time for questions. Ms. Hostris. May it please the Court. As a preliminary matter, the Court should reject Mr. Warner's argument that eligibility for TDIU should always be considered in evaluating a claim for extra scheduler consideration under Section 3.321B1. Further, the Court lacks jurisdiction over the second argument that Mr. Warner has raised, which is that 3.321B1 should have been applied to all of the disabilities. But getting back to the first argument first. Now what? Why do we lack jurisdiction over that issue? Because when Mr. Warner was before the Veterans Court, he wasn't challenging the Board's finding that he did not meet the extra scheduler requirements of 3.321B1 for purposes of VAT. Before, the Board was only his VAT. The need disability had been remanded back to the rating office to determine whether he was entitled to a higher rating. When he got to the Veterans Court, all Mr. Warner argued was that the Board should somehow confuse the standard for TDIU, 4.16A, unemployability, with the standard for extra scheduler rating under 3.321B1. And that's why the Veterans Court said, no, there was no misunderstanding there. The Board knew what the standard was for TDIU. The Board knew what the standard was for 3.321B1. To the extent that Mr. Warner is arguing today that that alleged confusion between unemployability and market interference was a misinterpretation of the regs, we don't challenge jurisdiction on that issue. And we didn't challenge it in our brief. We challenged it only on the separate issue of whether or not the Board was permitted under 3.321B1 to look only at his VAT disability. In fact, as Judge Wallach alluded to in his reply brief, Mr. Warner doesn't even in responding to our jurisdiction argument, Mr. Warner doesn't even address our argument that 3.321B1 applying to all disabilities issue was not raised below. Instead, he says that the court has jurisdiction over the issue of whether or not unemployability and market interference employment work properly decided. So he didn't even... But you agree. We agree that the jurisdiction... You agree that we have jurisdiction. We agree that the jurisdiction... So the Veterans Court neither addressed nor relied upon an interpretation of 3.321B1 that was raised before below. I mean, Mr. Warner agreed that his VAT disability was the only disability that was subject to consideration under 3.321B1 in the Veterans Court. So just to make sure I understand, what are you arguing, the argument that he's making here today that wasn't preserved by arguing it below? Is it the fact that they considered just the back and didn't include the knee part? Exactly. Okay. So you're saying that was waived. That was waived, yes. But getting back just briefly to the first argument, Mr. Warner's argument that somehow his grant of TDIU effective in 2006 should have been considered by the board in looking at extra scheduler for what he now says is back to 1996. I mean, that argument was not articulated in the briefs as far as I could see. But if the TDIU is effective as of 2006 and he was unemployable as of 2006 and then has no relevance for the period before 2006. No, no, no. But I think, just so I understand, we're talking about the mootness point, which is the point you lead with, the government leads with, that this issue is moot because he's been getting TDIU since 2006. And so there's nothing more to be prevailed by for him to get if he prevails in this. His view, so you can tell me why you disagree, if you disagree, is that no, if he were to prevail in the arguments he's making in this case, which go to the 3.321, then he'd be eligible, at least arguably, for some back payment, an increased rating retroactively back to 1996. Do you disagree with that? The board was correct in receiving it. He's not looking for, as far as I can see, Mr. Warner is not looking for TDIU prior to 2006. He's saying he's not at all. Not TDIU under 4.16, but he's looking for complete unemployability. No, he's not. He's looking for extra schedule under 3.321. And he says the fact that he was found unemployable as of 2006 means that he was markedly interfered with before 2006. That's illogical on its face. He says because he was found unemployable, since market interference is a lesser standard, he should also get market interference. But unemployability wasn't found until, effective 2006. He thinks he should get additional compensation for the period before 2006. But there was no finding of unemployability there. What if he can go back and say that there should have been a finding? Does he get to reassess that? I think he's already asked for that separately in a separate proceeding, and that's been denied. He can appeal that separately. There's another case? Sorry? There's another case you said? Well, there was a remand to the board. That's not before the court now. That's for the new stuff, right? Right. Well, he also, I think at that point, asked for an earlier effective date on TDIU. It was denied. He wasn't asking for it in this proceeding. He was asking for extra scheduler. Apparently, it's now clear for a period before 2006 because he got unemployability as of 2006. That doesn't even make sense. Let's strip out for the moment the argument that somehow his request for extra scheduler benefits are tied to the 4.16 TDIU. And I think you said this earlier, but I just want to make sure. Has he already litigated and lost on the question of whether just on the merits of his 3.321 claim, he's entitled to extra scheduler treatment because of market interference with employability? He did lose on that. He did lose on that, but in a prior proceeding, correct? But in this proceeding as well. The board found that he was not entitled to extra scheduler consideration for his back disability. Right, but he's saying that the error is, of course, that they didn't consider his entire array of disabilities. Right. Extra scheduler in connection with his knees and back were considered at one time. Okay, that's what happened. It was appealed to the Veterans Court, remanded back, and when it was remanded to the board, the board said, look, we can't determine whether Mr. Warner is entitled to a higher scheduler rating on his knees. We're remanding that back to the rating agency. We're going to consider just the back. And the evidence doesn't support a finding of extra scheduler rating for his back disability. Now, if you look at 3.321B1, it applies to a disability or disability. Here, the only increased rating that was before the board was the back. Because of the remand? Yes. Okay. Now, is there, at some point, is there going to be a time in which the knees and the back will all come together so that the board, or ultimately the court, will consider whether he's entitled to extra scheduler benefits because of his disabilities? That is unclear. I mean, my understanding is that the board reconsidered the knees, and at that time, he didn't bring up the back again. So Mr. Warner has never even taken the position before the board that it should consider both his knees and his back together. And the board was a fair reading of the plain language of 3.321B1. And this court, or I'm sorry, the Veterans Court's decision in Thun, which was affirmed by this court, allows the board to look only at a single disability. But that goes back to your very first point, which is to the extent that there's an argument to be made there, he's waived it because he didn't raise it. Right. He didn't raise that before the Veterans Court. And that type of issue is pending before the Court of Appeals for Veterans Claims. What's the status of that case? It's been fully briefed and awaiting a decision. Has it been argued, or is it not going to be argued? Well, it was argued, and then the en banc court asked for supplemental briefing twice. That briefing has been submitted. I don't think there's another argument scheduled. Ultimately, that case doesn't really matter for purposes of this case, because in that case, both disabilities were before the board, and it was alleged that the board should have considered them together in determining whether extra scheduler was permitted. And that is the disabilities issue. Right. You have to remember that under 3.321B1, under the Thun decision, the first thing you look at is whether the rating for an individual disability is sufficient to compensate for the loss of earning capacity with respect to that disability. Here, with respect to the back, Mr. Warner has a 40%, and the board found that that, because of his flexion, I mean, he argued also, well, my flexion is only five degrees, and you can have up to 30 degrees for 40%. The board found, no, the 40% is adequate for you, and therefore, we don't even have to look at this market interference thing, but if we do look at the market interference, there's no evidence that this back disability alone markedly interfered with your ability to work. He was employed intermittently up until he got his TDIU. Well, see, you're telling us, just to sort of go full circle on this, you're saying he didn't preserve the argument below that they should have cobbled together both the back and the knee injuries. Well, what if we agree with you on that, and then three months from now the CAVC decides that no, I mean, you should be doing these two together. How would he have known that that was the play when he was before the CAVC? How would he have known necessarily to make that argument if the CAVC decides that later on? Do you understand what I'm saying? In this case, the distinction is we didn't even know what the rating was for the knees at the time they considered the back. The knees had been remanded to see whether he was entitled to a higher schedule rating. If he had gotten a higher schedule rating, the whole issue of extra scheduling could have been rendered moot. In Johnson, there were two – How would that have been rendered moot? Well, if he had gotten 100% for his knees, then why would he need – Oh, okay. Why would he need extra – And that would all be retroactive to – Well, to whenever the board decided. I mean, the knees, remember, I think the effective date for the knees is slightly different from the back. That's another thing that complicates it. It sure does. So there's a reason why 3.321B1 applies to disability or disability because you have to show that the rating for a particular disability doesn't adequately compensate for your problem. And here, he's got TDIU as of 2006. He's had the 40 – As he said, a combined 70% since 1996, which adequately compensated him until he got the TDIU. And he's not been able to demonstrate that the knees, in this particular case, caused market interference in employment. And as I've argued, he didn't even raise that issue to the law. Obviously, his interpretation was consistent with the agency. And supposing that the CAVC should rule in the in-bank case that all of the disabilities should be considered together, then I suppose he comes back? He could potentially come back, go back to the rating agency and say, hey, look, you've got to consider my knees and my back together and decide whether this is relevant up before 2006. It also just is a minor point to point out that in his reply brief, Mr. Warner makes the point that, oh, you have to look at all the disabilities under 3.321 and under 4.16 to look at all the disabilities. But he even argues in his reply brief that potentially the board should have just looked at his knees in isolation to see whether he was unemployable based solely on his knees. So obviously, there is flexibility in these regulations to look at one disability or look at several disabilities, and then the claimant has to raise the issue for it to be properly before the board. Thank you. Thank you. Mr. Carpenter, we'll give you three minutes for rebuttal. May it please the Court. At the joint appendix at the JA-102 is the page in which the board discussed extra scheduler rating. And the way that this got back to the board was a May 2009 joint remand. And that joint remand provided that the board was to address whether the specific evidence in the record demonstrated that the veteran's lumbar spine disability markedly interfered with his employment, such that an extra scheduler rating would be warranted. Now, the legal standard here under the VA's regulation is marked interference with employment. The regulation, however, is broader than the terms of that joint remand. The joint remand said, consider it as to the back. The regulation mandates the service-connected disability or disabilities. The question of law that's before this Court is, is that when a veteran who doesn't have an application form is not told that he has to tell the VA where and when the market interference took place on any form, is suddenly subject to a board decision that narrows the consideration in direct contravention to the plain language of the regulation, is getting the benefit of that regulation. Market interference was shown by the fact that the VA acknowledged by their scheduler rating that this veteran's combined ratings were at 70%. That was in effect from February 1996 to March of 2006 when they granted the extra scheduler total rating. The point here simply is that the veteran is at a disadvantage if the VA doesn't follow the plain language of its own regulations. The regulation specifies what was to be considered. That was the issue that was raised below, and the Court below said, no, it's you that's confused, appellant. It's not the board that's confused. We're before this Court asking you to resolve that confusion. Does the regulation require a broader consideration than the consideration that was made by the board? I.e. of multiple disabilities. Correct. But that brings us full circle back around to the question of whether you raised that before the CAVC. And my point is, is what was raised before the CAVC was whether or not the board was confused about the legal standard. And the legal standard is market interference. And if you look only to the evidence of market interference for a single disability, then you're acting in contravention of the plain language of the regulation. Okay, so that second sentence, when you started, and if you look under, did you make that argument to, I don't know if you represented. I did not represent below. Was that argument made to the CAVC? The CAVC argument. The second argument that you just articulated. That, as articulated, was not made. What was made was that the board was confused about the legal standard and did not give an adequate statement of reasons or bases for why it narrowed it. Because they only considered the one. Narrowed it. Narrowed the consideration under extra scheduler under 3.321B to the back disability alone. Unless there's any further questions. Okay, thank you. I think both counsel, the case is submitted.